EN EL TRIBUNAL SUPREMO DE PUERTO RICO

<table>
<tr><td>

Carlos Javier Ramos; José Aramis Erazo Rivera; Nahir M. Bayona Hernández; Bethzaida García Pérez; Brendalis Pacheco Cruz; Nilda Ellis Rivera García; Geraldo Javier Cuadrado García; Sandra Patricia Luque Quintero

Apelados

v.

Estado Libre Asociado de Puerto Rico, por conducto de su Secretario de Justicia, Hon. Domingo Emmanuelli Hernández; Departamento de Educación, por conducto de su Secretario, Hon. Eliezer Ramos; Departamento de la Familia, por conducto de la Secretaria, Hon. Carmen Ana González; Departamento de Estado, por conducto del Hon. Omar J. Marrero Díaz

Apelados

Colegio de Profesionales del Trabajo Social

Apelantes

</td><td>

Certiorari

2024 TSPR 58

213 DPR ___

</td></tr>
</table>

Número del Caso:  CC-2022-0807

Fecha:  10 de junio de 2024

Tribunal de Apelaciones:

    Panel Especial

Representante legal de la parte peticionaria:

    Lcdo. Jorge L. Marchand Heredia

Representantes legales de la parte recurrida:

    Lcdo. Juan M. Gaud Pacheco
    Lcdo. Héctor A. Albertorio Blondet

 Oficina del Procurador General:

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Carmen A. Riera Cintrón
    Procuradora General Auxiliar

Materia: Derecho Constitucional – Constitucionalidad del requisito de colegiación compulsoria de profesionales del trabajo social.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carlos Javier Ramos; José Aramis Erazo Rivera; Nahir M. Bayona Hernández; Bethzaida García Pérez; Brendalis Pacheco Cruz; Nilda Ellis Rivera García; Geraldo Javier Cuadrado García; Sandra Patricia Luque Quintero<br><br>Apelados<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, por conducto de su Secretario de Justicia, Hon. Domingo Emmanuelli Hernández; Departamento de Educación, por conducto de su Secretario, Hon. Eliezer Ramos; Departamento de la Familia, por conducto de la Secretaria, Hon. Carmen Ana González; Departamento de Estado, por conducto del Hon. Omar J. Marrero Díaz<br><br>Apelados<br><br>Colegio de Profesionales del Trabajo Social<br><br>Apelantes | CC-2022-0807 |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 10 de junio de 2024.

Nuevamente tenemos la encomienda de dirimir la constitucionalidad de un estatuto que condiciona la obtención y retención de una licencia profesional a la afiliación a un colegio. Esta vez un grupo de trabajadores sociales reclama la vindicación de su derecho fundamental

a la libertad de asociación frente a una pieza legislativa que proscribe el ejercicio de su profesión en ausencia de una membresía en el Colegio de Profesionales del Trabajo Social de Puerto Rico.

Para descargar adecuadamente nuestra función adjudicativa, debemos auscultar si el requisito de colegiación impugnado es el mecanismo de regulación profesional menos lesivo del derecho en disputa. Adelantamos que, tras el análisis de rigor, concluimos que la colegiación compulsoria no constituye un elemento imprescindible para la consecución del interés apremiante del Estado de regular el ejercicio de la profesión de trabajo social y, por consiguiente, es inconstitucional.

Un examen riguroso de la Ley Núm. 171 de 11 de mayo de 1940, infra, refleja que la Junta Examinadora es el único organismo investido con las facultades reglamentarias y fiscalizadoras para lograr la protección del fin público antes esbozado. A su vez, en el caso de los trabajadores sociales, el interés gubernamental se puede alcanzar mediante la regulación adecuada de las cualificaciones y aptitudes necesarias para ingresar y permanecer en la profesión. Para ello, no es necesaria ni imprescindible la colegiación obligatoria.

Así las cosas, el esquema impugnado no se sostiene al palio de la Constitución de Puerto Rico. Compeler a los profesionales del trabajo social a afiliarse a un colegio al que no desean pertenecer y que, además, promueve

abiertamente agendas políticas e ideológicas no es un ejercicio válido de poder legislativo.

A continuación, expondremos los hechos que originaron la controversia ante nuestra consideración.

I

El 6 de agosto de 2021, un grupo de trabajadores sociales compuesto por los Sres. Carlos Javier Ramos, José Aramis Erazo Rivera, Geraldo J. Cuadrado García y las Sras. Nahir M. Bayona Hernández, Bethzaida García Pérez, Brendalis Pacheco Cruz, Nilda E. Rivera García, y Sandra P. Luque Quintero (trabajadores sociales) presentaron una demanda de sentencia declaratoria contra el Estado Libre Asociado de Puerto Rico y el Colegio de Profesionales del Trabajo Social. En esencia, solicitaron que el Tribunal de Primera Instancia decretara la inconstitucionalidad de la colegiación compulsoria establecida en la Ley Núm. 171 de 11 de mayo de 1940, infra, como condición necesaria para ejercer la profesión del trabajo social en Puerto Rico. Arguyeron que obligarlos a asociarse con quien no desean no es una condición válida para mantener su licencia profesional activa. Reconocieron que la reglamentación de la práctica del trabajo social es un interés de envergadura; sin embargo, enfatizaron que el fin público estaba debidamente salvaguardado a través de las facultades de la Junta Examinadora de Trabajo Social. Añadieron que la colegiación voluntaria era una medida menos intrusiva. Finalmente, manifestaron que el Colegio

realizaba expresiones ideológicas con las que no estaban de acuerdo y que ello constituía una violación de su derecho a la libertad de expresión.

El 9 de septiembre de 2021, previo a la contestación a la demanda, los trabajadores sociales solicitaron, como remedio provisional al amparo de la Regla 56 de Procedimiento Civil, 32 LPRA Ap. V, que se detuviera el cobro de las cuotas y que no se les exigiera pertenecer al Colegio para conservar su empleo. Luego de varios incidentes procesales, incluyendo la celebración de una vista argumentativa, el foro primario denegó la solicitud.

El 11 de octubre de 2021, el Colegio presentó su contestación a la demanda. En síntesis, alegó que la Junta Examinadora no cuenta con el presupuesto ni los recursos para asumir las funciones que el Colegio ha desempeñado en beneficio de la sociedad puertorriqueña por más de 88 años. En particular, afirmó que la colegiación compulsoria es necesaria para: asegurar la autorregulación de los trabajadores sociales; contribuir al desarrollo de la profesión; abogar por la aprobación de leyes, reglamentos o protocolos que este gremio considere importantes; fiscalizar la conducta de sus miembros, y el desarrollo y manejo de la educación continua, entre otros. Para finalizar, el Colegio aseguró que todas sus comparecencias oficiales se fundamentan en la protección de los estándares de la profesión y no responden a ideologías particulares.

Posteriormente, el Estado presentó una *Moción al amparo de la Regla 21.3 de Procedimiento Civil.*[1] Sin asumir una postura concreta sobre el asunto, aseveró que le correspondía al foro primario evaluar si en este caso existía un interés apremiante y si existían medidas menos intrusivas para los trabajadores sociales.

En riposta, los trabajadores sociales arguyeron que la solicitud del Estado era contraria a derecho. Afirmaron que era al Gobierno a quien le correspondía establecer que la colegiación impugnada es el medio menos oneroso para adelantar su interés apremiante. Consecuentemente, peticionaron que el Tribunal de Primera Instancia declarara con lugar su demanda.

Al respecto, el Colegio argumentó que la Regla 21.3 de Procedimiento Civil, <u>supra</u>, era inaplicable al caso, y que el Estado, como parte del pleito debía contestar la demanda o solicitar desestimación conforme a la Regla 10.2 de Procedimiento Civil, <u>supra</u>. A su vez, afirmó que el Estado tiene la obligación de defender la constitucionalidad de las leyes. Por último, el Colegio manifestó que antes de disponer del caso, se debía

---

[1] La Regla 21.3 de Procedimiento Civil, <u>supra</u>, dispone:

"[s]iempre que la constitucionalidad de una ley, una orden ejecutiva, una franquicia o un reglamento administrativo del Estado Libre Asociado de Puerto Rico se impugne en algún pleito en que éste o algún funcionario, funcionaria o agencia suyos no sea parte, el tribunal notificará dicha impugnación al Secretario o Secretaria de Justicia y permitirá la intervención del Estado Libre Asociado de Puerto Rico. El tribunal, de así estimarlo necesario, ordenará a comparecer al Estado Libre Asociado de Puerto Rico."

realizar un proceso de descubrimiento de prueba para demostrar la constitucionalidad de la colegiación compulsoria.

En el ínterin, el Tribunal de Primera Instancia celebró una vista argumentativa. Tras justipreciar los planteamientos de las partes, le ordenó al Colegio presentar un escrito en el que consignara su posición sobre la controversia. En respuesta, el Colegio presentó una moción de reconsideración en la que arguyó que, para poder defenderse adecuadamente, debía tener la oportunidad de descubrir evidencia. No obstante, su petición fue denegada.

Consecuentemente, el Colegio presentó una *Moción solicitando sentencia por las alegaciones*. Aseveró que aun si el foro primario analizaba las alegaciones de la manera más favorable, los demandantes no tenían derecho a la concesión de un remedio. Para sustentar su teoría, el Colegio afirmó que las fuentes interpretativas de la Declaración Universal de Derechos de las Naciones Unidas — en la cual se basó nuestra Carta de Derechos— no extienden la aplicación de la cláusula de libertad de asociación a las colegiaciones profesionales instituidas en virtud de ley.

El 5 de abril de 2022, el Tribunal de Primera Instancia dictó sentencia y declaró la inconstitucionalidad de la colegiación compulsoria en pugna. El foro primario ultimó que el Estado puede

asegurar la más alta competencia y calidad en los servicios de este grupo de profesionales a través de los poderes de licenciamiento de la Junta Examinadora y los requisitos de preparación académica y moral que debe reunir un aspirante. De igual modo, concluyó que existen medidas menos lesivas que la colegiación obligatoria, entre ellas, la colegiación voluntaria.

Inconformes, tanto el Colegio como los trabajadores sociales presentaron sus respectivos recursos de apelación ante el Tribunal de Apelaciones. Por su parte, los trabajadores sociales solicitaron que se modificara la sentencia del foro primario a los fines de que se ordenara el reembolso de todas las cuotas pagadas con posterioridad a la presentación de la demanda y se le prohibiera al Estado continuar exigiendo la colegiación compulsoria. En cambio, el Colegio solicitó la revocación del dictamen. Alegó que el foro primario erró al emitir una sentencia *sua sponte* sin que mediara moción dispositiva alguna. Al mismo tiempo, agregó que al no permitirle descubrir prueba se quebrantó su debido proceso de ley. En la alternativa, arguyó que la cláusula de libertad de asociación no es aplicable a las colegiaciones profesionales estatutarias.

Tras evaluar el asunto, el Tribunal de Apelaciones consolidó ambos recursos y emitió una sentencia en la que confirmó, en toda su extensión, el dictamen del foro de instancia. Concluyó que el Estado no satisfizo el estándar de análisis constitucional, pues evadió asumir una postura

sobre la controversia. En cuanto al Colegio, el foro intermedió enfatizó que tampoco satisfizo el escrutinio estricto y optó por diferir el asunto medular a una etapa posterior bajo la teoría de que necesitaba realizar descubrimiento de prueba. Por último, el foro *a quo* concluyó que la Junta Examinadora es el organismo facultado para adelantar el interés apremiante del Estado, mientras que el Colegio es un organismo diseñado para la protección de los intereses gremiales.

Nuevamente inconforme, el Colegio recurrió ante nos y solicitó que revoquemos la sentencia del Tribunal de Apelaciones y devolvamos el caso al Tribunal de Primera Instancia para que se le permita realizar un proceso de descubrimiento de prueba previo a disponer de la controversia.

Por su parte, los trabajadores sociales recurridos resaltaron que el esquema regulatorio de la profesión de trabajo social es muy similar al del Colegio de Optómetras y el del Colegio de Mecánicos Automotrices, cuya colegiación compulsoria declaramos inconstitucional. Al mismo tiempo, esbozaron que los profesionales estaban cansados de que los líderes del Colegio utilizaran el pago obligatorio de la cuota a conveniencia y se expresaran a nombre de todos los colegiados, sin autorización ni consulta previa, para adelantar agendas políticas e ideológicas particulares.

Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia.

II

**A. *Junta Examinadora de profesionales del trabajo social de Puerto Rico***

En el ejercicio de su poder de razón de Estado (police power), la Asamblea Legislativa aprobó la Ley 171 de 11 de mayo de 1940, según enmendada, conocida como la Ley del Colegio y de la Junta Examinadora de Profesionales del Trabajo Social en Puerto Rico, 20 LPRA sec. 821 *et seq*.

El mencionado estatuto creó la Junta Examinadora de Profesionales del Trabajo Social, compuesta por siete (7) miembros nombrados por el Gobernador de Puerto Rico con el consejo y consentimiento del Senado. Art. 5 de la Ley Núm. 171, supra, 20 LPRA sec. 841. De igual forma, se dispuso que la Junta Examinadora sería el único cuerpo autorizado para expedir licencias para la práctica del Trabajo Social en Puerto Rico, a toda persona que reúna los requisitos especificados en la ley. Art. 6 de la Ley Núm. 171, supra, 20 LPRA secs. 842, 862.

La Asamblea Legislativa delimitó varios métodos de elegibilidad para obtener una licencia permanente de trabajo social. Art. 8 de Ley Núm. 171, supra, 20 LPRA sec. 842. En lo pertinente, el aspirante, además de gozar de reconocida solvencia moral, debe cumplir con al menos uno de los requisitos siguientes:

**Sección I.** — Tener un título de bachiller de una universidad o colegio reconocidos y tener además dos (2) años de estudios postgraduados en trabajo social o su equivalente en créditos, y un certificado o diploma de trabajo social.

**Sección II.** — Tener un título de bachiller de una universidad o colegio reconocidos y por lo menos un año de estudios postgraduados en trabajo social, o su equivalente en créditos, y tener además dos (2) años de experiencia satisfactoria como trabajador social en una agencia de trabajo social reconocida.

**Sección III.** — Tener un título de bachiller de una universidad o colegio reconocidos, con especialización en trabajo social, siempre que el mínimo de créditos en trabajo social sea treinta (30), y tener, además, tres (3) o más años de experiencia satisfactoria como trabajador social en una agencia de trabajo social reconocida.

**Sección IV.** — Todas aquellas personas que, al entrar en vigor esta ley, posean una licencia provisional para la práctica de la profesión de trabajo social en Puerto Rico tendrán derecho a una licencia permanente tan pronto hayan completado treinta (30) créditos en trabajo social; Disponiéndose, que aquellas personas que estén trabajando como trabajadores sociales continuarán en el desempeño de sus puestos y tendrán un plazo de veinte (20) años [sic] para completar los créditos que sean necesarios para conseguir la licencia, permanente o provisional. Íd. Véase, además, Art. 10 de la Ley Núm. 171, supra, 20 LPRA sec. 846.

Una vez concedida, la licencia permanente tendrá carácter vitalicio salvo que sea cancelada por la Junta Examinadora luego de formular cargos y brindarle oportunidad de defensa a la persona cuya conducta se objeta. Art. 9 de la Ley Núm. 171, supra, 20 LPRA sec. 845.

Por otro lado, en virtud de su función regulatoria, la Junta Examinadora aprobó el Reglamento Núm. 9251 de 30 de diciembre de 2020, conocido como Reglamento de la Junta Examinadora de Profesionales del Trabajo Social en Puerto

Rico (Reglamento Núm. 9251). En su introducción, el Reglamento Núm. 9251 reconoce que "[l]a Junta Examinadora está facultada para reglamentar a [los] [p]rofesionales del [t]rabajo [s]ocial en Puerto Rico a los fines de proteger el interés público". Íd.

De ese modo, para asegurar el cumplimiento de la Ley Núm. 171, supra, el reglamento aludido, detalla el procedimiento de licenciamiento, las medidas disciplinarias y el procedimiento administrativo para la admisión, suspensión o separación del ejercicio de la profesión. Art. 1.3 del Reglamento Núm. 9251.

También, el cuerpo reglamentario establece que será función de la Junta Examinadora: (1) autorizar el ejercicio de la profesión; (2) denegar, suspender, revocar o restringir cualquier licencia, así como sancionar a toda persona que incumpla el Código de Ética; (3) informar al Colegio de las determinaciones disciplinarias que puedan afectar el estatus de colegiación de un profesional; (4) preparar y mantener un registro oficial de todas las licencias y certificados expedidos; (5) aprobar las normas necesarias para reglamentar el ejercicio profesional; (6) iniciar investigaciones o procedimientos administrativos *motu proprio* o por querella debidamente juramentada, contra algún trabajador social que incurra en violación a las leyes, reglamentos o el Código de Ética; (7) establecer los mecanismos de consulta y coordinación necesarios para desempeñar sus funciones; (8) rendir al

Gobernador, por conducto del Secretario de Estado, un informe anual sobre sus trabajos, y (9) citar testigos para que comparezcan o presenten evidencia sobre cualquier asunto bajo la jurisdicción de la Junta Examinadora. Art. 2 del Reglamento Núm. 9251.

**B. *Colegio de profesionales del trabajo social en Puerto Rico***

Por otra parte, mediante el Art. 1 de la Ley Núm. 171, supra, se viabilizó la creación del Colegio de Profesionales del Trabajo Social en Puerto Rico. Íd., 20 LPRA sec. 821. Así, se dispuso que luego de celebrada la primera reunión de la directiva del Colegio, ningún trabajador social podría ejercer su profesión en Puerto Rico sin afiliarse al Colegio. Art. 3 de la Ley Núm. 171, supra, 20 LPRA sec. 823.

Con arreglo al Art. 2 de la Ley Núm. 171, supra, el Colegio tiene facultad:

(a) Para subsistir a perpetuidad bajo ese nombre, demandar y ser demandado, como persona jurídica.
(b) Para poseer y usar un sello que podrá alterar a su voluntad.
(c) Para adquirir derechos y bienes, tanto muebles como inmuebles, por donación, legado, tributos entre sus propios miembros, compra, o de otro modo; y poseerlos, hipotecarlos, arrendarlos y disponer de los mismos en cualquier forma.
(d) Para nombrar sus directores y funcionarios u oficiales.
(e) Para adoptar su reglamento, que será obligatorio para todos sus miembros, según lo disponga la asamblea provista en el Artículo 21 de esta ley, y para enmendarlo en la forma y bajo los requisitos que en el mismo se estatuyan.
(f) Para proteger a sus miembros en el ejercicio de la profesión.
(g) Para ejercitar las facultades incidentales que fuesen necesarias o convenientes a los fines de su

creación y que no estuvieren en desacuerdo con esta Ley". 20 LPRA sec. 822.

Además, se dispuso que el Colegio, en consulta con la Junta Examinadora, establecería un programa de educación continuada. Art. 5 de la Ley Núm. 171, supra, 20 LPRA sec. 841. La administración de este programa se le delegó al Instituto de Educación Continuada adscrito al Colegio. Íd. Conforme al estatuto antes citado, el Instituto tiene "la responsabilidad de ofrecer un programa de educación continuada, así como evaluar y certificar aquellos programas que ofrecen otras entidades docentes y profesionales." Íd.

En el ejercicio de sus facultades, —los trabajadores sociales recurridos resaltaron que— el Colegio ha asumido posturas de toda índole, incluyendo políticas e ideológicas a nombre de todos los colegiados. En efecto, podemos tomar conocimiento de que el Colegio estableció una "Comisión permanente para el análisis del estatus político y la cuestión social" (Comisión). Véase, CTSPR, *Análisis del Estatus*, https://cptspr.org/estatus/ (última visita, 13 de febrero de 2024). Este organismo, de manera oficial postula que "la condición colonial de Puerto Rico afecta el desarrollo de nuestra identidad cultural, personal y colectiva, condicionando nuestras relaciones como ciudadanos (as) y residentes en nuestra nación y ante la comunidad mundial". Véase, Boletín informativo 2017, https: //cptspr.org/wp -content/uploads/2017/03/BOLETIN - INFORMATIVO- COMISIO%CC%81N-PARA-EL-ESTUDIO-DEL-ESTATUS-Y-

SU- IMPACTO-EN-LAS- POLI%CC%81TICAS- SOCIALES.pdf. (última visita 22 de febrero de 2024).

Consecuentemente, "el Colegio avaló los trabajos del Frente Amplio en Pro de la Asamblea Constitucional de Estatus y mantiene representación mediante un miembro de la Comisión de Estatus" Íd. De igual modo, esta entidad ha comparecido, en al menos cinco ocasiones, ante la Organización de las Naciones Unidas a abogar por la descolonización de Puerto Rico. Véase, Informe anual 2018, https: //cptspr.org/wp-content/uploads/2018/06/CP-Colegio-Prof-del-Trabajo-Social-ante-la-ONU-2018.pdf.

Entre las labores realizadas en el año 2020, la Comisión destacó: la elaboración de su presupuesto y la **participación y el auspicio de un foro con aspirantes a la gobernación de Puerto Rico, el 1 de octubre 2020**. Véase, Informe Anual 2019-2020, https://cptspr.org/wpconten020/ t/uploads/211/Informe -Anual.

Dicho lo anterior, es menester destacar que según el Art. 3 de la Ley Núm. 171, supra, la no afiliación al Colegio puede dar paso a las penalidades establecidas por práctica ilegal de la profesión. A esos efectos, toda persona que practique sin autorización la profesión del trabajo social será culpable de delito menos grave y, de ser convicta, se expondrá a una multa no menor de $100 dólares o pena de cárcel por un período no menor de dos (2) meses. Art. 19 de la Ley Núm. 171, supra, 20 LPRA sec. 850.

## C. *El derecho fundamental a la libertad de asociación*

La Constitución de Puerto Rico consagra de manera expresa que "[l]as personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares". Art. II, Sec. 6, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 299. Esta garantía Constitucional constituye un derecho fundamental, directamente relacionado con la libertad humana y la democracia. Rodríguez Casillas *et al*. v. Colegio, 202 DPR 428, 433 (2019).

Nuestra Carta de Derechos refleja una influencia importante por parte de la Declaración Universal de los Derechos Humanos, proclamada por las Naciones Unidas. J.J. Álvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 11. En lo pertinente, la declaración aludida establece que "[t]oda persona tiene derecho a la libertad de reunión y de asociación pacíficas" y que "[n]adie podrá ser obligado a pertenecer a una asociación". Art. 20 de la Declaración Universal de Derechos Humanos. Asamblea General de las Naciones Unidas, *Declaración Universal de Derechos Humanos*, https://www.un.org/en/about-us/ universal -declaration-of-human-rights (última visita, 5 de febrero de 2024).

Consecuentemente, al analizar los linderos de este derecho, reconocimos su vertiente negativa, o de no asociación. Rivera Schatz v. ELA y C. Abo. PR II, 191 DPR

791, 811-812 (2014). En particular, sentenciamos que "el derecho a la libre asociación necesariamente presupone el derecho de las personas a no asociarse". Íd.

Con lo anterior en mente, hemos reiterado que la colegiación compulsoria como requisito de licenciamiento profesional crea una fricción inevitable con el derecho de libertad de asociación de las personas afectadas. Rodríguez Casillas *et al*. v. Colegio, supra, pág. 448. Por tal razón, la validez de esta actuación estatal se analiza bajo el crisol del escrutinio estricto. Rodríguez Casillas *et al*. v. Colegio, supra, pág. 455. Por tratarse del estándar más riguroso, se presume la inconstitucionalidad de la medida en controversia. San Miguel Lorenzana v. ELA, 134 DPR 405, 425 (1993).

Así pues, para superar el escrutinio estricto, además de articular la existencia de un interés apremiante, el Estado debe demostrar que no tenía a su alcance medidas menos restrictivas que la impugnada para lograr el fin articulado. Rodríguez Casillas *et al*. v. Colegio, supra, pág. 450. En palabras sencillas, "cuando el Estado pretenda coartar el derecho a asociarse o a no asociarse, debe hacerlo cuando no le quede otra opción para proteger un determinado interés apremiante". Íd., pág., 433.

Recientemente, al aplicar el estándar Constitucional en el caso Vélez Colón v. Colegio de Optómetras y otros, 2023 TSPR 78, 212 DPR __ (2023), concluimos que la

disposición estatutaria que obligaba a los optómetras a ser miembros del Colegio de Optómetras era inconstitucional. Allí, luego de examinar con el debido rigor las leyes que reglamentan esa profesión, concluimos que no era indispensable obligar los optómetras a pertenecer a un colegio para adelantar el interés estatal de regular la profesión y resguardar la salud del pueblo.

De forma similar, en Delucca Jiménez v. Colegio de Médicos, 2023 TSPR 119, 213 DPR ___ (2023), invalidamos la colegiación compulsoria de los médicos cirujanos. Llegamos a esa determinación luego de colegir que la Junta de Licenciamiento y Disciplina Médica era el único organismo rector de la práctica de la medicina en Puerto Rico. Esbozamos que el buen ejercicio de esas funciones delegadas a la Junta afianzaba el interés apremiante en la regulación de profesión médica en protección de la salud pública.

## III

En primer lugar, es menester aclarar que este Tribunal se encuentra en total posición de atender la cuestión de umbral planteada en el caso; a saber, la validez constitucional de la colegiación compulsoria impuesta por mandato de ley a los trabajadores sociales. Contrario a la contención del Colegio, el foro primario actuó correctamente al dictar sentencia declaratoria luego de brindarle a las partes la oportunidad de ser oídos. La determinación de no realizar un proceso de descubrimiento

de prueba no constituyó un abuso de discreción, ni impide nuestra tarea adjudicativa. Esto es así por una sencilla razón; un examen minucioso de la Ley Núm. 171, supra, revela que la asociación compelida no es el mecanismo menos lesivo del derecho a la libertad de asociación de los trabajadores sociales y, por ende, no sobrevive el escrutinio estricto.

Aquí, el interés apremiante del Estado en la regulación de la profesión de trabajo social puede salvaguardarse mediante la reglamentación adecuada de las cualificaciones y aptitudes para obtener y mantener una licencia, así como las prerrogativas de licenciamiento exclusivas de la Junta Examinadora. En consonancia, los Arts. 8 y 10 de la Ley Núm. 171, supra, establecen los requisitos de preparación académica, destrezas y entereza moral que debe reunir un aspirante al ejercicio del trabajo social. Íd., 20 LPRA secs. 844, 846.

En esa línea, quien ostenta la facultad exclusiva para conceder, revocar o suspender una licencia profesional es la Junta Examinadora. Para el descargo de esa encomienda, se estableció un procedimiento administrativo formal mediante el Reglamento Núm. 9251, supra.

La Asamblea Legislativa no le delegó ninguna de estas facultades regulatorias al Colegio. Las prerrogativas de esta asociación van primordialmente dirigidas a la protección de sus intereses gremiales. Así, una de sus

facultades principales consiste en "[p]roteger a sus miembros en el ejercicio de la profesión". Art. 2 (e) de la Ley Núm. 171, supra, 20 LPRA sec. 822. El resto de los poderes que se le delegaron, en su mayoría, son mecanismos para su gobierno interno. Íd., 20 LPRA sec. 822.

Dicho esto, no pasamos por alto el rol activo que se le otorgó al Colegio de establecer, en conjunto con la Junta Examinadora, el programa de educación continua para los trabajadores sociales. Art. 6 de la Ley Núm. 171, supra, 20 LPRA sec. 842. Tampoco perdemos de vista que el Instituto de Educación Continuada, adscrito al Colegio, es el encargado de administrar ese programa. Íd. Ahora bien, esto no debe sorprendernos; al fin y al cabo, la concepción histórica de estas asociaciones profesionales y su propio nombre, ("colegio") muestran el enfoque académico que propició su creación. Véase, G. Figueroa Prieto, *Reglamentación de la conducta profesional en Puerto Rico: pasado, presente y futuro*, 68 Rev. Jur. UPR 729, 742-745 (1999).

No obstante, debemos descartar la noción de que el Colegio ostenta algún poder regulador exclusivo e independiente al de la Junta Examinadora. Y es que, si bien tiene injerencia sobre la reglamentación de los requisitos de educación continua, no puede establecer o modificar estos requisitos sin la consulta y el aval de la Junta Examinadora. Art. 6 de la Ley Núm. 171, supra, 20 LPRA sec. 842. En realidad, su rol principal —a través del

Instituto de Educación Continuada— consiste en fungir como proveedor y administrador del programa. Bien entendidas, sus funciones son las que ostentan tradicionalmente las instituciones educativas.

Empero, esa delegación estatutaria no justifica el requisito de afiliación compulsoria. De hecho, el Colegio de Abogados y Abogadas administra el Fondo de Fianza Notarial, aun cuando la membresía en el mencionado Colegio es voluntaria desde que emitimos nuestra determinación en Rivera Schatz v. ELA y C. Abo. PR II, supra.

Indiscutiblemente, en la controversia que nos atañe la regulación de la profesión del trabajo social a través de la Junta Examinadora, en el escenario de una colegiación voluntaria, no supondría el descalabro de la profesión o un riesgo social inminente que justifique la lesión de derechos fundamentales. De hecho, resulta interesante que entre las disposiciones estatutarias que rigen los requisitos de admisión a la profesión de trabajo social no se incluyó la exigencia de tomar un examen de reválida. Entonces, si la Asamblea Legislativa entendió que ello no era indispensable para adelantar su interés apremiante, difícilmente se podría sustentar que la colegiación compulsoria es el mecanismo menos restrictivo para lograr la excelencia en la profesión.

Por otra parte, es preciso enfatizar que la vindicación del derecho fundamental a la libertad de asociación en Puerto Rico no depende de que los colegios

profesionales exhiban inclinaciones políticas o ideológicas particulares. Sin embargo, condicionar una licencia profesional a la afiliación a un ente cuasipúblico que —con el beneficio de sus privilegios estatutarios— incurre en esta conducta expresiva, a nombre de todo un gremio, es inaceptable. Que los trabajadores sociales tengan que pertenecer a una asociación que adelanta intereses contrarios a sus valores y ajenos a la reglamentación profesional, so pena de cometer un delito es fatalmente inconstitucional. La profesión de cada individuo no puede estar subyugada a agendas ideológicas impuestas por organismos cuasipúblicos. Este proceder atenta contra los pilares fundamentales que resguardan nuestro sistema democrático.

Definitivamente, el Estado tiene mecanismos menos restrictivos para lograr sus objetivos. Aquí no hay ni un solo interés apremiante que no se pueda adelantar sin obligar a estos profesionales a asociarse con quien no desean. El surgimiento de una colegiación voluntaria, que es lo que supone un decreto de inconstitucionalidad, no afectaría de forma alguna la subsistencia del esquema regulador diseñado por la Asamblea Legislativa.

IV

Por los fundamentos expuestos, se confirma la sentencia del Tribunal de Apelaciones y se decreta la inconstitucionalidad de la colegiación compulsoria al

Colegio de Profesionales de Trabajo Social preceptuada en la Ley Núm. 171, supra.

Se dictará sentencia en conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Carlos Javier Ramos; José Aramis Erazo Rivera; Nahir M. Bayona Hernández; Bethzaida García Pérez; Brendalis Pacheco Cruz; Nilda Ellis Rivera García; Geraldo Javier Cuadrado García; Sandra Patricia Luque Quintero<br><br>Apelados<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, por conducto de su Secretario de Justicia, Hon. Domingo Emmanuelli Hernández; Departamento de Educación, por conducto de su Secretario, Hon. Eliezer Ramos; Departamento de la Familia, por conducto de la Secretaria, Hon. Carmen Ana González; Departamento de Estado, por conducto del Hon. Omar J. Marrero Díaz<br><br>Apelados<br><br>Colegio de Profesionales del Trabajo Social<br><br>Apelantes | CC-2022-0807 | |

SENTENCIA

En San Juan, Puerto Rico, a 10 de junio de 2024.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se confirma la sentencia del Tribunal de Apelaciones y se decreta la inconstitucionalidad de la colegiación compulsoria al Colegio de Profesionales de Trabajo Social preceptuada en la Ley Núm. 171, supra.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente con opinión escrita.

El Juez Asociado señor Colón Pérez disintió y hace constar las expresiones siguientes:

El requisito de colegiación compulsoria, que se exige en nuestro País como condición para ejercer determinadas profesiones, es una medida de protección social. El mismo, a todas luces, puede cohabitar en nuestro ordenamiento jurídico con el derecho constitucional a la libre asociación. **Uno no cancela al otro.** Sobre el particular, véase nuestra Opinión de Conformidad en *Reyes Sorto et al. v. CIAPR*, 212 DPR 109, 142-155 (2023) y nuestra Opinión Disidente en *Delucca v. Col. Méd.Cirujanos y otros*, 2023 TSPR 119, 213 DPR __ (2023).

Así las cosas, al evaluar cuidadosa y detenidamente el estatuto hoy en controversia, -- entiéndase, la Ley Núm. 171 de 11 de mayo de 1940, 20 LPRA sec. 821 et seq., disposición legal que crea el Colegio de Profesionales del Trabajo Social de Puerto Rico --, somos de la opinión que las funciones que dicha entidad ejerce constituyen el medio menos oneroso para adelantar el interés apremiante del estado de regular dicha profesión, por lo que el derecho de sus miembros a no asociarse debe ceder ante los intereses que adelanta la colegiación compulsoria.

Lo anterior, se puede apreciar con mayor claridad si tomamos en consideración que el Colegio de Profesionales del Trabajo Social de Puerto Rico tiene entre sus funciones y obligaciones las siguientes:

A. Fomenta[r] un compromiso ético-político que valida los principios y valores de la profesión de trabajo social. […]

D. Colabora[r] con todas las entidades gubernamentales, públicas y privadas, locales, federales e internacionales, cuyas funciones tengan por objetivo el bienestar de la sociedad y que cuentan con profesionales del trabajo social

para garantizar una prestación de servicios justa y equitativa. […]

F. **Fomenta[r] la creación y el desarrollo de oportunidades para el mejoramiento profesional de su membresía; procura que se observen las normas más altas en la calidad y rigurosidad del contenido de los adiestramientos de profesionales del trabajo social y ofrece la orientación necesaria a personas que deseen continuar sus estudios en trabajo social.**

G. **Contribu[ir] a que los servicios de trabajo social sean rendidos en la forma más adecuada posible, observando las prácticas aceptadas en la profesión, de acuerdo con su preparación académica, experiencia, especialización y área de práctica.**

H. **Desarrolla[r] e implanta un código de ética profesional que rige la conducta de los y las profesionales del trabajo social**

I. Desarrolla[r] e implanta un reglamento de la Comisión Permanente de Ética Profesional que garantiza el debido proceso de ley de los/as colegiados/as. […]

L. Asesora[r] a la Asamblea Legislativa, la Rama Ejecutiva y la Rama Judicial sobre la legislación de política pública y reglamentos.

M. Representa los intereses de los y las profesionales del trabajo social en aquellos asuntos que amenacen el desarrollo y mejoramiento de sus condiciones laborales. […]

Q. Denuncia[r], ante los medios de comunicación y la sociedad en general, las situaciones de injusticia y exclusión social que afecten a las poblaciones que se atienden, y a la propia clase profesional. (Énfasis nuestro).

> Artículo 7 del *Reglamento del Colegio de Profesionales del Trabajo Social de Puerto Rico,* https://cptspr.org/sobre-nosotros/base-legal/ (última visita, 10 de junio de 2024).

Así pues, y en vista de la importante función que desempeña el Colegio de Profesionales de Trabajo Social de Puerto Rico para adelantar los postulados antes reseñados, somos del criterio, como ya mencionamos, que el derecho a no asociarse de sus miembros debe ceder en escenarios como estos.

En el pasado hemos sido enfáticos en el rol que tiene en el País la colegiación compulsoria de diversas profesiones, y hoy volvemos a insistir en ello;

> [e]stas instituciones no solo han defendido, y defienden, los intereses de los gremios que agrupan, sino también los de la ciudadanía en general.

> Por otra parte, los referidos colegios profesionales cumplen con la importante función de educar, tanto a la sociedad como a sus miembros, sobre los asuntos que atañen a su profesión. De igual forma, se aseguran de que quienes forman parte de su gremio mantengan sus conocimientos actualizados y cumplan con los requerimientos éticos que les rigen, **protegiendo así a la ciudadanía de ser víctimas de prácticas ilegales o un desempeño incompetente por parte de los profesionales a los que estas instituciones regulan.** (Énfasis suplido). Opinión Disidente del Juez Asociado Colon Pérez en *Rodríguez Casillas et al. v. Colegio,* 202 DPR 428, 473-474 (2019).

Siendo ello así, no podemos estar de acuerdo con el resultado al que arriba una mayoría de mis compañeros y compañera de estrado en el presente caso, quienes de manera cuestionable decretaron la inconstitucionalidad de la

colegiación compulsoria al Colegio de Profesionales de Trabajo Social.

Es, pues, por todo lo antes expuesto, que muy respetuosamente disentimos del curso de acción seguido por una mayoría de esta Curia el día de hoy.

El Juez Asociado señor Estrella Martínez disintió sin opinión escrita.


                                Javier O. Sepúlveda Rodríguez
                                Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos Javier Ramos; José Aramis Erazo Rivera; Nahir M. Bayona Hernández; Bethzaida García Pérez; Brendalis Pacheco Cruz; Nilda Ellis Rivera García; Geraldo Javier Cuadrado García; Sandra Patricia Luque Quintero

Apelados

v.

Estado Libre Asociado de Puerto Rico, por conducto de su Secretario de Justicia, Hon. Domingo Emmanuelli Hernández; Departamento de Educación, por conducto de su Secretario, Hon. Eliezer Ramos; Departamento de la Familia, por conducto de su Secretaria, Hon. Carmen Ana González; Departamento de Estado, por conducto del Hon. Omar J. Marrero Díaz

Apelados

v.

Colegio de Profesionales del Trabajo Social

Apelante

CC-2022-0807

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió una Opinión disidente.

En San Juan, Puerto Rico, a 10 de junio de 2024.

Hoy se añade un eslabón más a la cadena de casos en los cuales una mayoría de mis compañeros y compañera de estrado, mediante un análisis automatizado y en absoluta abstracción de la realidad fáctica, descartan la medida que la Asamblea

Legislativa diseñó para regular una profesión cuya labor es de suma importancia para nuestro país. En particular, en el caso ante nos, se planteó la interrogante sobre si la colegiación compulsoria que dispone la Ley Núm. 171 de 11 de mayo de 1940 (Ley Núm. 171-1940), infra, respecto a los profesionales del trabajo social en Puerto Rico, sobrevive el análisis constitucional de escrutinio estricto. Nuestro deber, entonces, era auscultar si el Estado logró demostrar la existencia de un interés apremiante y que la colegiación compulsoria de los trabajadores sociales era la medida menos onerosa a su disposición para hacer valer el referido interés.

Sin embargo, el tracto procesal de este caso, en particular la denegatoria del foro primario de permitir el descubrimiento de prueba, imposibilitó nuestra tarea adjudicativa. Esto así, pues no tuvimos ante nos los elementos fácticos necesarios para determinar las funciones que, en efecto, llevaba a cabo el Colegio de Profesionales del Trabajo Social de Puerto Rico (Colegio) ni si la Junta Examinadora de Profesionales del Trabajo Social (Junta Examinadora) era una alternativa viable y efectiva al Colegio para cumplir con el interés apremiante que el Estado desea adelantar.

Consecuentemente, al no contar con el beneficio de esta información imprescindible para el análisis requerido, no estábamos en posición para hacer determinación alguna sobre la constitucionalidad del requisito de colegiación compulsoria que impone la Ley Núm. 171-1940. El único curso de acción razonable era devolver el caso al Tribunal de

Primera Instancia para que las partes celebraran el descubrimiento de prueba necesario y el foro primario hiciera las determinaciones de hechos pertinentes. Solamente así podíamos estar en la mejor posición para llevar a cabo el análisis que se nos requiere. Sin embargo, una mayoría de este Tribunal se hace de la vista larga al ignorar las particularidades de este caso y despacha la controversia ante nos mediante un análisis llano, incompleto y acomodaticio.

Por los fundamentos que expongo a continuación, disiento del curso de acción mayoritario. Soy del criterio que correspondía revocar al foro apelativo intermedio y ordenar la continuación del pleito ante el Tribunal de Primera Instancia.

## I

El 6 de agosto de 2021 los Sres. Carlos Javier Ramos; José Aramis Erazo Rivera; Geraldo Javier Cuadrado García; y las Sras. Nahir M. Bayona Hernández; Bethzaida García Pérez; Brendalis Pacheco Cruz; Nilda Ellis Rivera García; Sandra Patricia Luque Quintero (en conjunto, parte demandante) presentaron una demanda sobre sentencia declaratoria contra el Estado Libre Asociado de Puerto Rico; el Departamento de Educación de Puerto Rico; el Departamento de la Familia de Puerto Rico; el Departamento de Estado de Puerto Rico y el Colegio. Solicitaron que se declarara la inconstitucionalidad de la *Ley del Colegio y de la Junta Examinadora de Profesionales del Trabajo Social de Puerto Rico*, Ley Núm. 171 de 11 de mayo de 1940, 20 LPRA sec. 821 et seq.

Además, junto a la demanda, instaron una moción al amparo de la Regla 56 de Procedimiento Civil. 32 LPRA Ap. III. Solicitaron como remedio provisional que se ordenara al Colegio detener gestiones de cobro de cuotas contra ellos; que se reembolsaran las cantidades pagadas en cuotas con posterioridad al 6 de agosto de 2021; y que se impidiera a las agencias del Estado exigir el requisito de colegiación al Colegio como condición para mantener el empleo o renovar contratos, respectivamente.

El 21 de septiembre de 2021 el Estado se opuso a la solicitud de remedios provisionales. Argumentó que la solicitud era improcedente porque la continuación del cobro de la cuota no afectaría de manera alguna la efectividad de la sentencia que en su día podría dictarse y, además, que, de conformidad con el Artículo 678 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3424, no se puede emitir una orden para paralizar la aplicación de una ley. Por su parte, el Colegio también se opuso y acogió los argumentos que el Estado presentó.

El Tribunal de Primera Instancia, luego de celebrar una vista en la cual todas las partes tuvieron oportunidad de argumentar sus respectivas posturas, emitió una resolución mediante la cual denegó la solicitud de remedios provisionales de la parte demandante.

En el ínterin, el Colegio presentó su contestación a la demanda. Adujo que la Junta Examinadora no tenía las mismas facultades y obligaciones que el Colegio ni contaba con los

recursos necesarios para asumir las responsabilidades que el Colegio había ejercido; que el Colegio no había violentado los derechos constitucionales de los demandantes; y que el Estado tenía un interés apremiante en establecer la colegiación compulsoria de los trabajadores sociales para asegurar la autorregulación de la profesión. En ese sentido, enfatizó la naturaleza de la profesión de trabajadores sociales y su importancia para la ciudadanía.

Así las cosas, el Estado compareció y destacó lo resuelto por este Tribunal, a los efectos de que, "además de articular la existencia de un interés apremiante, será imprescindible que el Estado pruebe que no tenía a su alcance medidas menos onerosas que las legisladas para lograr el interés articulado". Rodríguez Casillas et al. v. Colegio, 202 DPR 428, 455 (2019). En consideración a lo anterior, solicitó al foro primario que procediera como en derecho corresponda.

El 4 de noviembre de 2021 el Tribunal de Primera Instancia emitió una orden para que el Colegio expresara su postura en cuanto al escrito que el Estado presentó y, además, señaló una vista para el 13 de diciembre de 2021 a los fines de discutirlo.

En cumplimiento, el Colegio presentó un escrito en el cual planteó la importancia de llevar a cabo un descubrimiento de prueba antes de disponer finalmente de la controversia sobre la constitucionalidad de la colegiación compulsoria. Esto así, pues el descubrimiento de prueba era necesario para presentar evidencia respecto a: 1) las labores que el Colegio

realizaba para cumplir con el interés apremiante del Estado de regular la profesión, y 2) la falta de fondos y recursos de la Junta Examinadora, lo cual le imposibilitaba asumir las responsabilidades que el Colegio había ejercido para el beneficio de la ciudadanía por los pasados ochenta (80) años.

Tras la celebración de la vista, el Tribunal de Primera Instancia denegó la petición del Colegio para llevar a cabo un descubrimiento de prueba.[1] Posteriormente, tras varios incidentes, el foro primario dictó Sentencia. Mediante esta, declaró la inconstitucionalidad de la disposición estatutaria de la Ley Núm. 171-1940 que establecía la colegiación compulsoria de los profesionales del trabajo social autorizados a ejercer la profesión en Puerto Rico. En particular, expresó lo siguiente:

> Como cuestión de hecho [,] en este caso el Estado no ha planteado una justificación para requerir la colegiación obligatoria de los demandantes. El colegio argumentó que esa limitación al derecho constitucional a la libertad de asociación es constitucional porque responde a un interés apremiante que necesitan probarlo por medio de un descubrimiento de prueba.
>
> .    .    .    .    .    .    .    .
>
> Existen alternativas menos onerosas que la colegiación obligatoria para proteger el interés público y la afiliación voluntaria es una de ellas. Las otras están recogidas en la ley por medio de la creación de una junta examinadora y la imposición de condiciones de educación para solicitar una licencia.
>
> .    .    .    .    .    .    .    .
>
> Finalmente, los problemas fiscales y administrativos de la Junta Examinadora no la relevan de sus facultades y funciones exclusivas indelegables conferidas por la Asamblea Legislativa y que no pueden ser asumidas por el Colegio.[2]

---

[1] Apéndice del recurso, pág. 228
[2] Apéndice del recurso, pág. 194

Inconformes, ambas partes presentaron recursos de apelación ante el Tribunal de Apelaciones. Por un lado, la parte demandante alegó que el foro primario había errado al no conceder en la Sentencia el remedio solicitado de ordenar al Colegio detener las gestiones de cobro de cuotas, reembolsar las cantidades pagadas en cuotas con posterioridad al 6 de agosto de 2021, impedir que las agencias del Estado exigieran el requisito de colegiación como condición para mantener el empleo o renovar contratos. Por el otro, el Colegio señaló como error que el foro primario emitiera una sentencia sumaria *sua ponte* a favor de la parte demandante sin que mediara solicitud alguna, sin permitirle al Colegio realizar un descubrimiento de prueba y que hiciera una determinación sobre la inconstitucionalidad de la colegiación compulsoria en controversia sin tener elemento fáctico alguno ante sí.

Luego de consolidar ambos recursos y contando con las respectivas oposiciones, el 30 de septiembre de 2022 el Tribunal de Apelaciones emitió una Sentencia mediante la cual confirmó, en todos sus aspectos, la sentencia del foro primario. En cuanto a los planteamientos de la parte demandante, expresó que, "en ausencia de una sentencia firme que declare su inconstitucionalidad, la solicitud de los apelantes en cuanto busca impedir su aplicación u observancia, es contraria al Artículo 678 del Código de

Enjuiciamiento Civil, 32 LPRA 3524".[3] En cuanto a la argumentación del Colegio, expresó lo siguiente:

> El Estado no satisfizo el criterio jurisprudencial para determinar la constitucionalidad de una disposición que impone la colegiación compulsoria a un profesional en nuestra jurisdicción, a saber: la existencia de un interés apremiante y la inexistencia de un medio menos oneroso para alcanzarlo. Sencillamente, no tomó posición. Esquivó abiertamente la controversia y pasó el batón al poder judicial.

> Tampoco el Colegio hizo una aportación al respecto. Aunque incluyó un "wish list" de lo que[,] a su entender[,] constituía el interés apremiante, difirió el asunto a una etapa posterior del pleito al afirmar que[,] para establecer dicho estándar[,] necesitaba realizar descubrimiento de prueba. En fin, en el presente caso no se estableció el interés apremiante del Colegio en la colegiación compulsoria y que esta fuera el medio menos oneroso para alcanzarlo.

Sobre el argumento del Colegio en cuanto a la necesidad de llevar a cabo el descubrimiento de prueba para tener un mejor entendimiento del cuadro fáctico relacionado con las labores que llevaba a cabo el Colegio y la efectividad y viabilidad de la Junta Examinadora, el foro apelativo intermedio expresó que:

> El derecho constitucional a no asociarse reconocido en nuestra constitución y declarado en toda su extensión en Rodríguez Casillas et al. v. Colegio [202 DPR 428 (2019)] es de alto rango y su reconocimiento no está sujeto a ninguna condición que no sea la de ser ciudadano del Estado Libre Asociado de Puerto Rico. En consecuencia, si nuestro más alto foro no condicionó su disfrute a ningún factor externo, tampoco lo haremos nosotros.[4]

---

[3] Apéndice del recurso, pág. 28.
[4] Apéndice del recurso, pág. 32.

Todavía insatisfecho, el Colegio presentó oportunamente una *Petición de certiorari* ante este Tribunal, la cual acogimos como una apelación, mediante la cual hizo los siguientes señalamientos de error:

> Incurrió en error el Honorable Tribunal de Apelaciones al confirmar el Tribunal de Primera Instancia que emitió una sentencia sumaria *sua ponte* a favor de la parte demandante sin que mediara solicitud alguna en total violación a las Reglas de Procedimiento Civil y el debido proceso de ley de la parte apelante.

> Incurrió en error el Honorable Tribunal de Apelaciones al confirmar el Tribunal de Primera Instancia que prohíbe al Colegio de Profesionales del Trabajo Social realizar descubrimiento de prueba en clara violación a su derecho a un debido proceso de ley y determinar en su consecuencia la inconstitucionalidad de la colegiación sin tener elemento fáctico alguno.

> Incurrió en error el Honorable Tribunal de Apelaciones al confirmar el Tribunal de Primera Instancia que se negó a atender el planteamiento levantado por la parte apelante a los efectos de que la cláusula de libertad de asociación no les aplica a las colegiaciones profesionales debidamente legisladas.

Procedo, pues, a discutir el derecho aplicable y detallar cómo hubiese dispuesto del caso ante nos.

## II

### A. Derecho a la libertad de asociación

El derecho a la libertad de asociación surge de nuestra Constitución, la cual expresamente dicta que "[l]as personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares". Art. II, Sec. 6, Const. ELA, LPRA, Tomo 1, ed. 2016. Además de la vertiente positiva del derecho constitucional a la libre asociación, este Tribunal también ha reconocido el derecho en

su vertiente negativa, dígase, el derecho a no asociarse. Rodríguez Casillas et al. v. Colegio, 202 DPR 428, 476 (2019); Rivera Schatz v. ELA y C. Abo. PR II, 191 DPR 791, 811 (2014). Asimismo, hemos expresado que este derecho no es absoluto y puede ceder en determinadas circunstancias ante intereses de mayor jerarquía o ante situaciones que revistan un alto interés público. P.N.P. v. De Castro Font II, 172 DPR 883, 894 (2007); Democratic Party v. Tribunal Electoral, 107 DPR 1, 25 (1978).

Particularmente, hemos reiterado la norma de que cualquier acción del Estado que incida sobre el derecho a la libre asociación debe analizarse al amparo del estándar de un escrutinio estricto. Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813; Rodríguez Casillas et al. v. Colegio, supra, págs. 449-450. Este análisis es en extremo riguroso, a tal punto que la ley impugnada se presume inconstitucional. Rodríguez Pagán v. Dpto. de Servicios Sociales, 132 DPR 617, 635 (1993).

Sin embargo, esto no significa que el escrutinio estricto es "estricto en teoría, pero fatal en la práctica". (Traducción suplida). Adarand Constructors, Inc. v. Peña, 515 US 200, 237. Véase también: Grutter v. Bollinger, 539 US 306. Por el contrario, el Estado puede legislar de manera que interfiera con este derecho, siempre y cuando demuestre la existencia de un interés colectivo de superior jerarquía y que la condición promueve su consecución. Rodríguez Pagán v. Dpto. de Servicios Sociales, supra, pág. 635.

Este estándar de revisión judicial requiere evaluar dos criterios; el Estado debe demostrar que: 1) la acción impugnada sirve un interés gubernamental apremiante; y 2) que no tenía a su alcance una medida menos onerosa para lograr el interés articulado. Rodríguez Casillas et al. v. Colegio, supra, pág. 467; Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813; Domínguez Castro v. ELA, 178 DPR 1, 87-88 (2010); Calo Morales v. Cartagena Calo, 129 DPR 102, 133 (1991).

Sobre el primer criterio, es necesario aclarar que el Estado tiene el deber de identificar la existencia de un interés de alta jerarquía y no basta con identificar cualquier tipo de interés gubernamental. En particular, le corresponde al Estado demostrar que existe un interés apremiante y que el medio utilizado para promover dicho interés es el necesario, esto es, que es el menos oneroso para adelantarlo. Pérez Román v. Proc. Esp. Rel. de Fam., 148 DPR 201, 213 (1999).

El segundo paso de este análisis requiere evaluar si existe una medida menos onerosa que la medida impugnada para proteger el interés apremiante. Rodríguez Casillas et al. v. Colegio, supra, pág. 450; Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813. La Corte Suprema de los Estados Unidos ha explicado que esto implica evaluar si el acto impugnado es **necesario** para adelantar el interés apremiante que el Estado identificó. City of Richmond v. J.A. Croson Co., 488 US 469, 471 (1989).

Ahora bien, tanto este Tribunal como la Corte Suprema Federal se ha embarcado en la tarea de definir cómo se debe

evaluar si, en efecto, existe un medio menos oneroso. En U.S. v Playboy Entertainment Group, Inc., 529 US 803 (2000), la Corte Suprema de los Estados Unidos, al aplicar el escrutinio estricto, analizó si el Estado contaba con una alternativa menos restrictiva para cumplir con su interés apremiante. En particular, la Corte Suprema evaluó no solo si el medio menos oneroso existía en teoría, sino que **evaluó que este fuese efectivo en la práctica.** Además, **explicó que, cuando se plantea la existencia de una alternativa plausible y menos restrictiva que la impugnada, es obligación del Estado probar que esa medida propuesta sería inefectiva en la consecución del interés adelantado.** U.S. v Playboy Entertainment Group, Inc., supra, pág. 816. Es decir, para concluir que existen medidas menos onerosas, no es suficiente apuntar a la existencia de una alternativa que podría cumplir con el interés apremiante del Estado, **sino que es forzoso evaluar la viabilidad y efectividad de las medidas alternativas para asegurarse que en efecto cumpliría con su propósito.**

Este Tribunal también consideró la viabilidad de una medida alternativa en Trinidad Hernández v. ELA, 188 DPR 828 (2013). El escrutinio aplicable en ese caso requería que la modificación contractual cuestionada, además de ser razonable, debía ser necesaria para adelantar un propósito gubernamental importante. Sobre esto, este Tribunal expresó que "no se sostendrá el menoscabo de una obligación contractual si la parte demandante demuestra que existen alternativas menos drásticas o severas que las que el

legislador escogió para lograr su objetivo". Id., supra, pág. 837. Sin embargo, los allí demandantes alegaron de forma generalizada que existían alternativas menos onerosas, **pero no detallaron cómo estas se llevarían a cabo ni si asegurarían la solvencia del Sistema de Retiro.** Entonces, este Tribunal concluyó que estos de no demostraron "evidencia para convencer al tribunal en un juicio que estas alternativas **son viables y menos onerosas**". (Énfasis suplido) Trinidad Hernández v. ELA, supra, pág. 838. Evidentemente, al evaluar si existe un medio menos oneroso para lograr el interés apremiante que promulga el Estado, es necesario demostrar mediante evidencia que el medio menos oneroso, en efecto, existe y que, en términos prácticos, es viable.

**B. Ley del Colegio y de la Junta Examinadora de Profesionales del Trabajo Social de Puerto Rico**

En el 1940, con el propósito de disponer para la creación, y establecer los deberes, las funciones y las facultades del Colegio de Profesionales del Trabajo Social de Puerto Rico y de la Junta Examinadora de Trabajadores Sociales, la Asamblea Legislativa aprobó la Ley Núm. 171-1940, supra.

En esta ley, la Asamblea Legislativa enumeró las facultades particulares que tendría el Colegio:

El Colegio tendrá facultad:

(a) Para subsistir a perpetuidad bajo ese nombre, demandar y ser demandado, como persona jurídica.

(b) Para poseer y usar un sello que podrá alterar a su voluntad.

(c) Para adquirir derechos y bienes, tanto muebles como inmuebles, por donación, legado, tributos entre sus propios miembros, compra, o de otro modo; y poseerlos, hipotecarlos, arrendarlos y disponer de los mismos en cualquier forma.

(d) Para nombrar sus directores y funcionarios u oficiales.

(e) Para adoptar su reglamento, que será obligatorio para todos sus miembros, según lo disponga la asamblea provista en el Artículo 21 de esta ley, y para enmendarlo en la forma y bajo los requisitos que en el mismo se estatuyan.

(f) Para proteger a sus miembros en el ejercicio de la profesión.

(g) Para ejercitar las facultades incidentales que fuesen necesarias o convenientes a los fines de su creación y que no estuvieren en desacuerdo con esta Ley. 20 LPRA sec. 822

Aunque el artículo citado enumera siete facultades que el Colegio ostenta, la ley también le impone, en artículos posteriores, una serie de deberes que solamente el Colegio puede llevar a cabo. Por ejemplo, el artículo 6, titulado "Autorización para expedir licencias", expresamente dispone que "[l]a Junta Examinadora será el único cuerpo autorizado para expedir licencias para la práctica de Trabajo Social en Puerto Rico[…]". 20 LPRA sec. 842. No obstante, ese mismo artículo le impone la obligación al Colegio, en consulta con la Junta Examinadora, a establecer un programa de educación continuada a cargo del Instituto de Educación Continuada (Instituto), adscrito al Colegio, y a implantar un reglamento para el mencionado programa. Íd. Asimismo, el Instituto, además de administrar el programa de educación continuada, tiene la responsabilidad de evaluar y certificar aquellos

programas que ofrecen otras entidades docentes y profesionales. Íd. Finalmente, en el artículo 7 de la referida ley se le impone la responsabilidad al Colegio de informar a la Junta Examinadora los nombres de los trabajadores sociales que no cumplan con el requisito de educación continuada. 20 LPRA 843.

En cuanto a la Junta Examinadora, la Ley Núm. 171-1940, supra, dispone que "la Junta Examinadora será el único cuerpo autorizado para expedir licencias para la práctica de Trabajo Social en Puerto Rico, a toda persona que reúna los requisitos especificados en los Artículos 8 y 10 de esta Ley". 20 LPRA sec. 842. Además, de otorgarle la facultad a la Junta Examinadora de expedir licencias, la Ley Núm. 171-1940 también le faculta a cancelarlas: "[l]a licencia permanente tendrá carácter vitalicio a menos que sea cancelada por la Junta Examinadora, por previa formulación de cargos y oportunidad de defensa para la persona cuya conducta está en entredicho". 20 LPRA sec. 845.

Finalmente, el artículo 4 dispone que "[s]erán miembros del Colegio, todas las personas admitidas a ejercer la profesión de trabajo social en Puerto Rico, según las disposiciones de esta Ley y que cumplan los deberes que éste les señala". 20 LPRA sec. 824.

### III

El Colegio solicitó que revisáramos la determinación del Tribunal de Apelaciones que confirmó la determinación del foro primario que declaró la inconstitucionalidad del

requisito de colegiación compulsoria de los profesionales del trabajo social de Puerto Rico.

Tal y como se ha hecho en la gama de controversias que han surgido sobre la constitucionalidad de la colegiación compulsoria de distintas profesiones en Puerto Rico, la controversia ante nos requería analizarse a la luz del escrutinio estricto. Consecuentemente, recaía en el Estado, en primer lugar, la carga de demostrar la existencia de un interés apremiante y que la colegiación compulsoria era la medida menos onerosa para adelantar el referido interés apremiante.

A pesar de ello, una mayoría de este Tribunal, erróneamente, concluye que procede dictar la inconstitucionalidad de la colegiación compulsoria sin tan siquiera permitirle al Estado la oportunidad de presentar prueba dirigida a demostrar que la colegiación compulsoria era, en efecto, la medida menos onerosa. De esta manera, a través de una limitación impropia del descubrimiento de prueba, imposibilitan la tarea del Estado y le despojan de una oportunidad genuina para justificar la colegiación compulsoria de los Trabajadores Sociales y decretan que la medida es inconstitucional. Por entender que el análisis que llevó a cabo una mayoría de mis compañeros y compañera de estrado es errado, en la medida en que se basó en un expediente completamente carente de evidencia sobre la viabilidad de la medida propuesta, disiento.

Como reseñé, el primer paso de este análisis exigía identificar cuál era el interés apremiante que el Estado intentaba salvaguardar mediante la colegiación compulsoria de los trabajadores sociales. Sobre esta interrogante, este Tribunal ha reiterado que, en el ejercicio del poder de razón de Estado, la Asamblea Legislativa tiene la facultad de regular y controlar la práctica de las profesiones. Rodríguez Casillas et al. v. Colegio, supra, págs. 439-440; Matos v. Junta Examinadora, 165 DPR 741, 754 (2005). Es decir, no debió haber controversia sobre el hecho de que la regulación de la profesión de los trabajadores sociales es un interés apremiante legítimo que cumple con el crisol constitucional que exige el escrutinio estricto.

Ahora bien, luego de identificar un interés apremiante legítimo, en segundo lugar, nos correspondía auscultar si la colegiación compulsoria era el medio menos oneroso al alcance del Estado para adelantar el referido interés apremiante. Para llevar a cabo este proceso analítico, era necesario que este Tribunal tuviese ante sí todos los elementos fácticos materiales; este análisis no podía limitarse a comparar la medida legislada, dígase la colegiación compulsoria, con la medida propuesta, la Junta Examinadora, desde un punto de vista puramente teórico y en abstración de los hechos particulares de cada profesión, su colegio y su Junta Examinadora. Por esta razón es que la Mayoría de este Tribunal comete un grave error al limitar su análisis constitucional a un simple ejercicio de pareo de las funciones que surgen de

la ley habilitadora, mientras rechazan la necesidad de auscultar la capacidad real de la Junta Examinadora para llevar a cabo las funciones que comparte con el Colegio o aquellas que le delega por completo.

Por el contrario, no tengo duda de que, para descargar nuestra obligación de manera responsable y arribar a una conclusión certera, era crucial que determináramos la viabilidad del aducido medio menos oneroso *vis a vis* la colegiación compulsoria. Sobre esto, elementos pertinentes a considerar hubiesen sido: si existía una duplicidad de funciones entre el Colegio y la Junta Examinadora, qué tareas en efecto llevaba a cabo cada entidad, y la capacidad de la Junta Examinadora para sustituir efectivamente al Colegio y absorber la carga de trabajo que recaía sobre esta entidad. En particular, alguna de la información material para el análisis hubiese sido la composición de la Junta Examinadora; cómo se manejaba el trámite de investigación y procesamiento de quejas en contra de trabajadores sociales; cuántas quejas se presentan anualmente; ante cuál entidad; quién las investiga; quién finalmente hace una determinación sobre los méritos o deméritos de estas; la capacidad de la Junta Examinadora para manejar la educación continua requerida de sus profesionales y, de manera específica, si el Colegio llevaba a cabo otras funciones particulares que la Junta Examinadora no podrá efectuar por sí sola sin el apoyo del Colegio.

La mera existencia de la Junta Examinadora, por sí solo, no debió haber sido razón suficiente para concluir que esta constituye tanto una alternativa viable a la colegiación compulsoria como el medio menos oneroso para que el Estado descargue su facultad de regular la profesión. No puedo, responsablemente y en buena consciencia, emitir una determinación final sobre la constitucionalidad de la colegiación compulsoria del Colegio de Profesionales del Trabajo Social sin el beneficio de un expediente robusto que se haya nutrido de un descubrimiento de prueba completo. Al resolver de esta manera, una mayoría de este Tribunal, completamente a ciegas de la relación real entre el Colegio, la Junta Examinadora y los profesionales del trabajo, arriba a una conclusión que podría tener consecuencias nefastas sobre la regulación de la profesión.

Además, como mencioné, nuestro ordenamiento jurídico le impone al Estado la obligación de mostrar que la colegiación compulsoria es la medida menos onerosa para adelantar el referido interés apremiante. ¿Cómo podría el Estado cumplir con este mandato sin llevar a cabo un descubrimiento de prueba? Resulta insensato que, por un lado, se le imponga la responsabilidad de demostrar que la medida legislada es el medio menos oneroso para cumplir con su cometido, pero por el otro, no se le permita obtener y presentar evidencia que nos ponga en posición de evaluar la realidad fáctica tanto del Colegio como de la Junta Examinadora. Lo contrario, y lo que hoy se avala mediante la opinión mayoritaria, es exigirle al

Estado que defienda la constitucionalidad de una ley, pero despojarle de la única herramienta a su disposición para lograr este cometido. Denegar el descubrimiento de prueba en esta controversia indudablemente puso al Estado y al Colegio en una posición de indefensión.

En fin, la controversia sobre la constitucionalidad de la colegiación compulsoria de los profesionales del trabajo social de Puerto Rico requería la consideración de un número de factores que fueron ignorados. El ejercicio analítico que exigía este caso no debió darse en el abstracto o de manera automática; por el contrario, como expresé en mi opinión de conformidad en Felix Román Negrón v. Colegio de Contadores Públicos Autorizados, 212 DPR 509 (2023), y mis opiniones disidentes en Delucca Jiménez v. Colegio de Médicos Cirujanos de Puerto Rico, 2023 TSPR 119 (2023), Vélez Colón v. Colegio de Optómetras de Puerto Rico, 212 DPR 293 (2023) y Colegio de Médicos Veterinarios de Puerto Rico v. Veterinario Express, 210 DPR 527 (2022), estábamos obligados a evaluar detenida y cuidadosamente toda la prueba relevante a las facultades de las entidades que, en conjunto, regulaban la profesión.

Es decir, no podíamos limitarnos a evaluar el texto de la Ley Núm. 171-1940, supra, sino que era imprescindible determinar si la Junta Examinadora estaba capacitada para llevar a cabo las funciones que recaían sobre el Colegio y que son necesarias para adelantar el interés del Estado en regular la profesión. Este ejercicio no es posible sin

autorizar primero a las partes a que lleven a cabo el descubrimiento de prueba solicitado.

Por esto, era necesario devolver este caso al Tribunal de Primera Instancia y ordenar que se permitiera el descubrimiento de prueba solicitado para que el foro primario y, de ser necesario, el foro apelativo intermedio y este Tribunal, pudiésemos tomar una decisión informada sobre la constitucionalidad del estatuto impugnado.

**IV**

Por los fundamentos esbozados, disiento enérgicamente.


Maite D. Oronoz Rodríguez
Jueza Presidenta